IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **AXEL NOEL APONTE GARCIA, DIXIA ALMIRKA LOPEZ SANTIAGO**<br><br>**PLAINTIFFS**<br><br>**v.**<br><br>*FEDERAL AVIATION ADMINISTRATION, ADC LTD. N.M., MIGUEL A. CARRION VAZQUEZ*<br><br><br>**DEFENDANT** | **CIVIL NO.** |

## COMPLAINT

TO THE HONORABLE COURT:

COME NOW Plaintiffs through the undersigned attorney, who allege, expose and request relief as follows:

### *Introduction*

### *Jurisdiction and Venue*

1. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, and the Federal Torts Claims Act U.S.C. §§ 1346, 2671, et seq.

2. Further this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

3. Venue is proper in this Court under 28 U.S.C. §§ 1391(b), as the plaintiffs and the defendant all reside or are situated within this district.

### *The Parties*

*Plaintiffs:*

4. The plaintiff, Axel Noel Aponte García, is of legal age, married, unemployed and a resident of Cidra, Puerto Rico. His physical address is: Bo. Rincón Candelas Carr. 171 R. 733 K. 1.0, Cidra, P.R. 00739 and the postcard P.O. Box 875, Cidra P.R. 00739, and its telephone number is: 787-672-1250.

5. The plaintiff, Dixia Almirka López Santiago, is of legal age, married, a housewife and a neighbor of Cidra, Puerto Rico. Her physical address is: Bo. Rincón Candelas Carr. 171 R. 733 K. 1.0, Cidra, P.R. 00739 and the postcard P.O. Box 875, Cidra P.R. 00739, and its telephone number is: 787-404-7310.

*Defendants:*

*Defendant, Federal Aviation Administration*

6. The Defendant, Federal Aviation Administration (FAA), is a federal agency of the United States Government with a primary place of business at: 800 Independence Avenue SW, Washington, D.C. 20591. Action is brought against Defendant FAA through the United States District Attorney for the District of Puerto Rico at Torre Chardón, Suite 1201, 350 Carlos Chardón Street, San Juan, PR 00918.

*Defendant, Miguel A. Carrion Vázquez*

7. The Defendant, Miguel A. Carrion Vázquez (Carrion), is of legal age, married, a security supervisor and a resident of Caguas, Puerto Rico. Its physical address is: Urb. Arbolada F-26 Calle Caguas, Caguas P.R. 00725 and its telephone number is: 787-586-9339 and 939-337-8766.

*Defendant, ADC Ltd. N.M.*

8.  The Defendant, ADC Ltd. N.M. (ADC), is a for-profit corporation organized under the laws of the State of Puerto Rico and authorized to conduct business in Puerto Rico, which is dedicated to providing security services. Its physical address is: Urb. Enramada D-17 Camino de Amapolas, BAYAMON, PR, 00961 and the postal address is: 909 Virginia Street NE, Suite 104, ALBUQUERQUE, NM, 87108.

9.  8. The Co-defendants of unknown names are the Insurance Companies X, Y, Z, who are, presumably, the insurance companies of the defendants.

10. 9. Companies A, B and C are fictitious names that designate corporations, partnerships or associations whose real names are currently unknown, and which are or could be liable to the plaintiff as a result of their negligent acts or omissions or negligent.

11. 10. John Doe, Jane Doe and Joe Doe are fictitious names that designate people whose real names are currently unknown, and who are or could be liable to the plaintiff as a result of their negligent or negligent acts or omissions, either in their personal capacity or as agents and or employees of the defendants.

*General Allegations*

12. Mr. Axel Noel Aponte García (hereinafter Aponte or Mr. Aponte), was an employee of the Defendant, ADC, as security officer at the Luis Muñoz Marín Airport from June 14, 2019 to August 1, 2019.

13. Mr. Aponte's immediate supervisor while he was working for ADC was Mr. Miguel A. Carrion Vázquez.

14. That at the beginning of Aponte's employment at ADC, Carrion expressed to Aponte his dissatisfaction with his recruitment by indicating that he was going to nickname him "God Award".

15. Aponte informed Mr. Carrion that he did not accept to be addressed under a nickname.

16. That on June 20, 2019, Aponte began his shift from 4:00 in the morning to 4:00 in the afternoon, when he noticed that Officer Valentin was absent.

17. That on June 20, 2019, Officer Valentin was assigning the shift from 4:00 in the morning to 4:00 in the afternoon.

18. That after noticing the absence of Officer Valentín, Aponte observed that another officer in the shift, Officer Ortiz was preparing the Daily Report and that he reported in such report that Officer Valentín was present.

19. That on June 21, 2019, Aponte showed up for his shift from 4:00 in the morning to 12:00 noon.

20. That on June 21, 2019, during the work shift from 4:00 in the morning to 4:00 in the afternoon, Officer Valentín was assigned to work among other officers.

21. That on said shift of June 21, Officer Valentín had not shown up for his shift at 4:00 a.m. as assigned.

22. That Officer Jones, who was also on duty, indicated to Aponte that he had to get used to the fact that Officer Valentin always arrived after 9:00 a.m., on Fridays.

23. That on June 21, 2019, Mr. Aponte noticed that Officer Valentín was late for his work shift that day at 9:15 in the morning.

24. That Aponte sent an email to Mr. Cordova on July 1, 2019.

25. That among the matters reported in the email, Plaintiff informed Mr. Cordova that Sup. Carrion treated him in a harsh and rude manner.

26. That on July 16, 2019, Plaintiff's shift started at 8:00 at night and ended at 4:00 in the morning.

27. That at the end of the shift at 4:00 in the morning, Supervisor Carrion appeared on Plaintiff's shift.

28. That Plaintiff, upon the arrival of Sup. Carrion, presents him with a military-themed cap as a gift from his trip to Florida, in an attempt to harmonize relations with Sup. Carrion.

29. Sup. Carrion, faced with such gesture, asked the Plaintiff if he had acquired such a cap in Key West, to which the Plaintiff replied that he had not, followed by Sup. Carrion's remark that he was asking him because "Key West is full of homosexuals", making a veiled insult of a sexual nature towards the applicant.

30. That July 18, 2019, during the shift from 12:00 noon to 8:00 at night, Sup. Carrion who worked from 4:00 am to 12:00 noon.

31. That after finishing his shift on July 18, he remained working after his assigned schedule.

32. That during that shift, Officer Ortiz was on schedule from 4:00 am to 4:00 pm.

33. That on that day, Sup. Carrion, dispatched Officer Ortiz contrary to the scheduled itinerary and stayed on duty with the Plaintiff.

34. That at 1:00 p.m. on the aforementioned date, the Plaintiff approached the Sup. Carrion area and offered him coffee.

35. When going to Sup. Carrion, he was startled and then answered yes.

36. After receiving the coffee, Sup. Carrion rebukes the Plaintiff about his facial hair style.

37. Plaintiff had been wearing this style of facial hair since early July 2019.

38. The Plaintiff informs him that according to the ADC Employee Regulations, officers can keep a lock as long as it is well cared for.

39. Sup. Carrion replied that he did not care for what the regulations said, that he did not like that that officers have any facial hair on the job, that he was in charge and that whatever he said were the rules.

40. Subsequently, Sup. Carrion continued to rebuke the Plaintiff as to whether he "already understood the ADP system" referring to when the plaintiff recorded overtime hours worked which Sup. Carrion refused to include on the Plaintiff's payroll.

41. Mr. Carrion threatened the Plaintiff with "ripping his head off" if he recorded the hours that Plaintiff worked "overtime".

42. On July 24, 2019, the Plaintiff notified Sup. Carrion by email of his concern and dissatisfaction with the schedules since he observed that there were officers who were not assigned night shifts working at midnight (12) hours with only one (1) day off while other employees enjoyed two (2) days off and were not assigned late-night shifts while said shifts were constantly

assigned to the plaintiff.

43. Subsequently, on July 27, 2019, the Plaintiff was working his 8:00 p.m. shift. to 4:00 a.m.

44. Plaintiff and Officer Cruz received a call from Sup. Carrion at the number 939-337-8766, which was answered by Cruz.

45. Sup. Carrion, informs Officer Cruz to call him from his personal cell phone, in violation of the ADC LTD employee regulations. N.M.

46. Immediately afterwards, Sup. Carrion tells Officer Cruz to call him back from the security post.

47. Cruz calls Carrion again from the phone at the security post and puts the call on speaker phone mode at 8:21 p.m. at 787-586-9339, as required by Carrion.

48. When answering the call, Carrion begins to allege that Plaintiff and Cruz had made multiple calls to his phone and insults and threatens them by saying that they were bastards and saying "I'm going to rip their heads off."

49. Upon hearing the threat, the Plaintiff identifies himself over the loudspeaker and asks Carrion to calm down and explains that they had not made calls to him since they had just entered the shift.

50. Faced with this answer, Carrion reiterated his threat and states that they are both bastards and says "I'm going to rip their heads off."

51. Plaintiff thereafter called the police to file a complaint regarding the threat made by Carrion.

52. Later, on July 29, 219 at 4:00 a.m., Sup. Carrion shows up for his work shift and tells Cruz that he had to speak with him without the presence of the plaintiff.

53. The plaintiff in the presence of Cruz indicates to Sup. Carrion that he needs to speak with him about the incident of July 27, 2019.

54. In response to this request, Sup. Carrion, in an altered manner, told the Plaintiff that he had nothing to talk to him about, that everything he said was a lie, and he complains that both officers had notified the police.

55. That on July 31, 2019, Plaintiff requested a restraining order before the Municipal Court of Cidra in Caguas for a Protection Order under Law No. 284-1999, known as the Law Against Stalking, against Carrion.

56. That the Municipal Court of Cidra / Caguas issued an Ex Parte Restraining Order on July 31, 2019 in favor of Aponte and against Carrion, which among other things ordered that Carrion surrender all firearms in his possession to the Puerto Rico Police Department.

57. On August 1, 2019, the Plaintiff notified an Incident Report to Ms. Connie Williams, which related what happened on July 27, 2019 regarding the threats from Sup. Carrion.

58. 63. On August 1, 2019, the Plaintiff called José Ortiz of the Federal Aviation Administration (FAA) to notify him of the protection order. This informed him that said entity had no interference in the internal affairs of the ADC LTD staff. N.M.

59. That on August 1, 2019 Ms. Connie Williams, President of ADC, instructs Of. Ortiz, four (4) hours later at 4:12 p.m. sends an email to Of. Ortiz to remove Plaintiff's regulation weapon, badge, and other ADC equipment.

60. That Mrs. Williams also indicated to Of. Ortiz to inform Plaintiff that he was fired.

61. That on August 2, 2019, Ms. Williams sent Plaintiff an email stating that he was fired.

62. In the email, Ms. Williams stated that Aponte's dismissal was at the request of the

Federal Aviation Administration Contracting Officer, Keri Henderson.

63. Ms. Williams's email did not state that Aponte's dismissal was as a result of improper conduct.

64. That during his time working for ADC, Aponte never received any disciplinary warning, written or verbal, for any reason.

65. That on August 3, 2019, the plaintiff requests unemployment benefits from the Puerto Rico Department of Labor and Human Resources.

66. That as part of the investigation of the claim filed with the Department of Labor, the Aponte was summoned to an interview on August 20, 2019, where he was informed that ADC was questioning the Aponte's eligibility for unemployment benefits.

67. At said meeting, the Department of Labor Aponte was made aware of a letter sent by Keri Henderson, of the FAA, dated August 1, 2019, in which alleged that there were complaints that Aponte had caused difficulty and discontent among the officials of ADC.

68. That Keri Henderson, works in Washington, D.C. and does not have any supervisory contact with the ADC work area at the Luis Muñoz Marín Airport.

69. That Keri Henderson, never supervised the ADC officers.

70. That the FAA letter signed by Ms. Henderson sets forth statements contrary to the reasons for the dismissal reported to the plaintiff by ADC.

71. The Department of Labor, issued a determination on Aponte's unemployment claim, finding that the evidence provided by ADC did not show that the plaintiff had violated any rule of the employer.

72. That consequently, the Department of Labor notified the plaintiff that ADC appealed to said agency the determination granting unemployment benefits to the plaintiff and

summoning him to an administrative hearing on October 3, 2019, in Caguas.

73. That on October 3, 2019, ADC never appeared at the hearing indicated on October 3, 2019 before the Department of Labor.

74. That Sup. Carrion has a history of allegations hostile conduct towards ADC employees.

75. That Officer Robles in or there on April 30, 2018, filed a claim with the federal agency National Labor Relations Board, alleging hostile conduct and the use of coercion to obtain statements from employees.

76. That said agency carried out an administrative investigation of the aforementioned claim, of which ADC was notified.

77. That said dispute was in force during the events of this lawsuit and that it culminated in December 2019.

78. That Officer Robles in or there on August 9, 2018, filed a claim with the federal agency National Labor Relations Board, alleging hostile conduct, harassment and false representations on the part of Mr. Carrion.

79. That said agency carried out an administrative investigation of the aforementioned claim, of which ADC was notified.

80. That said dispute was in force during the events of this lawsuit and that it ended in December 2019.

81. That also on November 1, 2018, Of. Robles filed a claim for coercive measures by Sup. Carrion, with the federal agency National Labor Relations Board.

82. That said agency carried out an administrative investigation of the aforementioned claim, of which ADC was notified.

83. That the aforementioned claim was in force during the events of this lawsuit and ended in December 2019.

84. That on May 20, 2019, Of. Cruz informed ADC that he had to file a complaint with the police for harassment and hostile conduct by Mr. Carrion.

85. That during the incident with Mr. Carrion and Of. Cruz on May 20, 2019, was the Of. Ortiz, who did not intervene in ensuring the safety of Of. Cruz and Mr. Carrion.

86. That despite being disarmed by the Protection Order issued on July 31, 2019, Sup. Carrion continued to work at ADC in contravention of the contract with the FAA, which requires ADC officers to be armed.

87. That Sup. Carrion made representations that he knew to be false to the FAA about the plaintiff's conduct, indicating that he had engaged in improper conduct.

88. That Sup. Carrion made representations that he knew to be false to the FAA about the plaintiff's conduct, indicating that he had engaged in improper conduct with the intention of having the plaintiff fired.

89. That the ADC made false representations to the FAA about the plaintiff's conduct, indicating that the plaintiff had engaged in improper conduct.

90. That ADC never investigated the allegations of misconduct brought against the Plaintiff.

91. That FAA never investigated, before recommending the defendant's removal, the veracity of the Plaintiff's allegations of improper conduct reported by ADC and Sup. Carrion.

92. That ADC, Sup. Carrion and FAA, through Keri Henderson, conspired to make false statements of the plaintiff's conduct in order to fire him.

93. That ADC and FAA, through Keri Henderson, made false representations about the

Plaintiff's conduct before the Puerto Rico Department of Labor and Human Resources.

### *First Claim for Relief: RETALIATION LAW 115-1991*

94. Paragraphs 1 through 93 above are incorporated as if fully set forth herein.

95. FAA's actions consisting in requesting the removal of Plaintiff resulted in Plaintiff wrongful termination of his employment.

96. That FAA never investigated, before recommending the defendant's removal, the veracity of the Plaintiff's allegations of improper conduct reported by ADC and Sup. Carrion.

97. Inasmuch as Plaintiff's termination from employment was the result of the FAA's request for removal, the FAA is liable for wrongful termination under the Federal Torts Claims Act U.S.C. §§ 1346, 2671, et seq

### *Second Claim for Relief: RETALIATION LAW 115-1991*

98. The actions of the ADC violate Law No. 115 of December 20, 1991, as amended, known as the Law Against Unfair Dismissal or Retaliation to all Employees for Offering Testimony before a Legislative, Administrative or Judicial Forum (29 LPRA § 194 et seq).

99. The Plaintiff incurred in protected conduct under Act No. 115 when informing by email of July 1, 2019, Vice President Jerome Cordova, about the disrespectful, rude and harsh treatment of Sup. Carrion.

100. The Plaintiff incurred in protected conduct under Act No. 115 by reporting by email dated July 1, 2019, to Vice President Jerome Cordova about the practice of employees collecting hours as worked while they were absent from the job of job.

101. The plaintiff engaged in protected conduct under Act No. 115 by reporting by email dated

July 1, 2019, to Vice President Jerome Cordova about the practice of employees collecting hours as worked while they were absent from the job of job.

102. The plaintiff incurred in protected conduct under Act No. 115 when testifying before the Cidra / Caguas Municipal Court, in procedure LA2019-0548, on the Protection Order under Act No. 284-1999, known as the Act Against Stalking.

103. The plaintiff's dismissal occurred one (1) day after he petitioned the Cidra / Caguas Municipal Court for the Protection Order against Sup. Carrion.

104. By violating the Establishment Clause as set forth above, LMS School's, and therefore the Commonwealth, has under color of statutes, ordinances, regulations, policies, custom, or usage, deprived or threatened to deprive the plaintiffs of rights secured by the First and Fourteenth Amendments to the U.S. Constitution, entitling them to a remedy under 42 U.S.C. § 1983.

### Third Claim for Relief: VIOLATION OF THE WORK DAY IN PUERTO RICO LAW 379-1948

105. Paragraphs 1 through 114 above are incorporated as if fully set forth herein

106. The actions of the defendant also violate Act No. 379 of May 15, 1948, as amended, known as the Act to Establish the Work Day in Puerto Rico (29 L.P.R.A §271 et seq).

107. Article 4 of Law 379-1948 establishes that overtime hours are those that an employee works in a week for his employer in excess of forty (40) hours.

108. During the week of July 20, 2019 to July 26, 2019, the plaintiff worked fifty-six (56) hours.

109. That of those 56 hours, the sixteen (16) hours worked in excess of the forty weekly hours were not paid as overtime.

### Fourth Claim for Relief: VIOLATION OF THE WORK DAY IN PUERTO RICO LAW 379-1948

110. Article 1802 of the Civil Code of Puerto Rico provides that "He who by action or omission causes harm to another, intervening fault or negligence, is obligated to repair the damage caused."

111. The co-defendant, Miguel Carrion, maliciously and with the intention of causing harm to the plaintiff, made false statements to the FAA indicating that the plaintiff's conduct was improper.

112. Mr. Carrion made these expressions after the plaintiff pointed out a scheme by which the co-defendant provided his access card to the payroll system to some employees so that they could alter their hours of entry and attendance to claim the payment of hours not worked.

113. To the extent that the plaintiff did not participate in the schedule alterations, Mr. Carrion maintained hostile and harassing behavior towards the plaintiff.

114. Mr. Carrion's false statements towards the FAA resulted in the FAA issuing a recommendation for the removal of the plaintiff from his area of employment, which had the practical consequence of the plaintiff's dismissal since ADC does not hold another place of employment. employment where he could relocate the applicant.

115. Mr. Carrion was the complainant's immediate supervisor and therefore the only person who could provide statements of the complainant's job performance.

116. Co-defendant Keri Henderson states that the FAA based its recommendation on complaints that the plaintiff allegedly caused hardship and discontent among ADC security officers, who were supervised by Mr. Carrion and not Keri Henderson.

117. The false statements of Mr. Carrion constitute a wrongful action that resulted in the dismissal of the plaintiff.

*Fifth Claim for Relief: VICARIOUS LIABILITY OF ARTICLE 1803 OF THE CIVIL CODE AGAINST ADC LTD. NM*

118. Article 1803 of the Civil Code of Puerto Rico provides that the "company will be liable vicariously for the acts or omissions of negligence or negligence with respect to the damages caused by its dependents in the service of the branches in which they were employed, or on the occasion of its functions".

119. By virtue of the aforementioned legal provision, ADC vicariously responds for the actions of Mr. Carrion, regarding the false statements made by him and that caused the dismissal of the plaintiff and the damages resulting from said conduct.

120. At all times during the events mentioned in this complaint, Mr. Carrion was an employee of the co-defendant ADC.

### *Seventh Claim for Relief: NEGLIGENCE UNDER ARTICLE 1802 OF THE CIVIL CODE AGAINST ADC LTD. NM*

121. The co-defendant ADC was aware of Mr. Carrion's history of hostile conduct and pattern of threats.

122. Both Officer Robles and Officer Cruz had reported on numerous occasions on the threatening conduct of Mr. Carrion.

123. The plaintiff also warned co-defendant ADC, using its open-door policy, about the threatening conduct of Mr. Carrion.

124. At no time did it take measures to protect the other employees from Mr. Carrion's pattern of harassment, which was armed by ADC at all times when he threatened the other security officers.

125. The negligence of the co-defendant ADC, caused the plaintiff to be constantly subjected to harassment to his person and threats against his life by Mr. Carrion.

*Damages*

126. Plaintiff seek damages in the amount of $100,000.00 for the remarks against Mr. Aponte's good reputation and security clearance.

127. Plaintiff seeks $59,715.48 in lost wages.

128. Plaintiff seeks the amount of $319,430.96 under the Retaliation Law, corresponding to the penalty of double the damages established by statute.

129. Plaintiff seeks that all defendants be held joint and severally liable.

*Attorney Fees*

130. Plaintiffs also request an order awarding them the costs of this action, including attorneys' fees, costs, and expenses, under 42 U.S.C. § 1988.

*Other Relief*

131. Plaintiffs additionally request such other relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In Caguas, Puerto Rico this 3rd of June 2022.

s/Carlos A. Cintron Garcia, Esq.
USDC-PR: 306413
PO BOX 7222
CAGUAS, PR  00726-7222
TEL: 787-341-5918
cintrongarcialaw@gmail.com

*Attorney for Plaintiffs*